FINKELSTEIN & KRINSK LLP
Jeffrey R. Krinsk, Esq. (SBN 109234)
John J. Nelson, Esq. (SBN 317598)
Keia James Atkinson, Esq. (SBN 316649)
501 West Broadway, Suite 1260
San Diego, CA 92101
Telephone: (619) 238-1333
Facsimile:  (619) 238-5425

Attorneys for Plaintiffs
and the Putative Class

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

TAWANNA RICE and KELLY RICE
and all others similarly situated

Plaintiffs,

v.

KIMBERLY-CLARK CORPORATION,
a Delaware corporation

Defendant.

Case No: 2:21-cv-01519-KJM-KJN

**FIRST  AMENDED  CLASS  ACTION COMPLAINT FOR:**

**1.     VIOLATION OF CAL. BUS. & PROF. CODE § 17500, *et seq.*;**

**2.     VIOLATION OF CAL. CIV. CODE § 1750, *et seq.*; AND**

**3.     VIOLATION OF CAL. BUS. & PROF. CODE § 17200, *et seq.***

**<u>JURY TRIAL DEMANDED</u>**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.      PRELIMINARY STATEMENT

1.      Plaintiffs Tawanna Rice and Kelly Rice (collectively "Plaintiffs") on behalf of their individual selves and all others similarly situated, allege as follows:

2.      Defendant Kimberly-Clark Corporation ("Kimberly-Clark" or "Defendant") owns, controls, promotes, and distributes Huggies brand Sung & Dry diapers (the "Class Product"). Defendant advertises these diapers as helping keep children "dry and comfy" and promises parents that they "carefully select each ingredient that goes into Huggies Diapers[1]." Moreover, Defendant assures parents that their diapers are hypoallergenic and that "Huggies Snug & Dry has you covered, with up to 12-hour leak protection to help keep you dry, comfy, and focused on more interesting things." Unfortunately for many parents who rely on these representations when choosing products for their babies, Defendant's Snug & Dry diapers have a propensity to harm the skin of children and Defendant does not disclose this known fact prior to or at the time of transacting to allow parents to make informed decisions for themselves and their children.

3.      As a result of Defendant's willful and/or negligent manufacturing, design, and promotion of the Class Product, a significant number of children who wear the Snug & Dry diapers will develop a reaction to those diapers that may manifest in prolonged rashes, blistering, peeling, and what appear to be chemical burns to the areas of the skin that were covered by the diapers. While many children may develop diaper rash, diaper rash is a transitory condition and will clear up soon after the child is cleaned and changed. However, in the case of the Rice family and many other affected families, the adverse skin reaction that results from wearing the Class Product persists despite frequent changes, application of creams and ointments, and cleaning and keeping the affected areas dry and free from urine or stool. The persistent injuries that result from the Class Product are serious enough that parents are forced to seek medical

---

[1] https://www.huggies.com/en-us/diapers/snug-and-dry

FIRST AMENDED COMPLAINT                              2:21-cv-01519-KJM-KMN

consultation and/or treatment, including prescription medicine. Moreover, because the injury caused by the Class Product breaks the skin barrier, bacterial or fungal infections are likely to compound the injury. The skin serves an important immune function by serving as a barrier to infection and when the underlying layers are exposed for prolonged periods, immune resistance is diminished, and bacterial or fungal infections may result and require additional treatment.

4.      The Huggies brand spends tens of millions of dollars on advertising every year as part of a marketing effort to create a pervasive message that its diapers are safe, gentle, and suitable for young children. As a result, many parents do not associate their choice of diaper, from a brand like Huggies, to be the source of persistent injuries to their children that manifest as skin peeling, blisters, lesions, and what appear to be chemical burns on the skin of young children.

5.      Unfortunately for many parents, they are unable to trace these injuries to the diapers because they believe that the diapers are suitable for children and there are no warnings on the Class Product label that would alert them to cease use in the case of persistent injury like those experienced by the Rice family and many others. It is only when parents cease use of the Class Product and switch to another diaper that the progress of the injury halts and the child begins to heal.

6.      Had Defendant disclosed to prospective parents, on the Class Product label or at the time of transaction, the known qualities of the Snug & Dry diapers, Parents could either avoid using the product or, at the very least, could identify the source of harm to their children's skin and cease use of the offending product.

7.      Defendant has long known of reports of persistent adverse skin reactions from concerned parents of injured children who wear the Class Product, yet concealed this fact from consumers in an effort to increase the sales of the Class Product.  For example, in or about 2014, a concerned parent posted the following review to the Huggies brand website:

FIRST AMENDED COMPLAINT                                    2:21-cv-01519-KJM-KMN

1
2
3
4
5
6
7
8
9
10
11
12
13
14



**chemical burn!!!**

Bought a bulk poack of 176 of these because they were on sale. I quickly figured out why.

Not even 48hrs in these and my poor daughter (1mo old) had blisters on her bottom. Her top layer of skin was peeling off and she was bleeding. I quickly rushed her to her pediatricians office and they prescribed us a cream for 2nd degree burns.

This is bull!!! And of course since I don't have the receipt and discarded the box, nothing will be done. I would have saved the box but we have diaper storage on the changing table.

So here we are stuck with over 150 diapers and out $35.

Thanks a ton Huggies.

**Recommends this product**  X No

Helpful?   Yes · 0   No · 0   Report

**Response from Huggies:**

Huggies Brand Team · 7 years ago

We are so sorry for any discomfort and irritation your little one has experienced. Because the health and safety of little ones is our number one concern, a senior member of our Consumer Care team would like to speak with you directly. Please reach out to us here: http://bit.ly/d2E3Zz. Our team can also be contacted at 1-888-233-3853 (Monday through Friday 8:00 am – 4:00 pm CST). Thank you.

15      8.      And a representative from Huggies responded to that complaint by
16   emphasizing that, "the health and safety of little ones is our number one concern" and
17   asking the poster to contact them to learn more about the incident. Over the next seven
18   years, the Huggies website was flooded with such complaints and Defendant's
19   representatives not only responded by inviting more information but eventually the
20   responses evolved to assist Defendant with concealing the fact that Huggies is well
21   aware of the propensity of the Class Product to harm children. For example, in 2020 a
22   concerned parent posted a review to which Defendant responded by stating that such
23   a reaction was "unexpected" and that "our diapers are designed to be gentle on
24   sensitive skin:"

25
26
27
28

FIRST AMENDED COMPLAINT                    2:21-cv-01519-KJM-KMN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Leaves awful rash**

I switch between huggies little movers and snug and dry and I just started putting two and two together that every time we use a box of snug and dry it cause a rash and a trip to the doctors office to get a prescription cream. The last time we used snug and dry diapers was the worst rash my daughter has gotten. The skin actually broke on her feminine parts and was bleeding. Please be cautions of these diapers.
I be seen lots of other complaints about these diapers, is nothing be done about this?

**Recommends this product  X No**

Helpful?   Yes · 0    No · 0    Report

**Response from Huggies:**



Oh no, Kat! The last thing we'd like to hear is that your little one has been in any discomfort, as your baby's health and well-being is our top priority. We truly hope your baby feels better soon! Please know that our diapers are designed to be gentle on sensitive skin, so this is definitely unexpected. So we can find out more about what happened, and try to help, can you please reach out to a senior member of our team at 1-888-233-3853 (weekdays, 8AM-5PM CT)? We hope to hear from you soon. Thank you.

     9.     And in 2021 a consumer posted concerns to which Defendant responded by unequivocally denying that Huggies could cause any such harm, stating, "Please know that the ingredients and materials used in all our Huggies® diapers are evaluated by pediatricians and safety professionals to ensure they are safe to use on even the most delicate skin. We can assure you our Huggies® products can't cause a chemical burn because they're made of materials which do not create any chemical reaction, nor will they react with stool or urine:"

FIRST AMENDED COMPLAINT          2:21-cv-01519-KJM-KMN



michellejordan · 3 months ago

**Chemical Burns**

Recently everyone started stocking up on supplies once again and there were no Huggies Little Snugglers so I purchased 2 boxes of the Snug and Dry. BIG MISTAKE. After using only one diaper my 7 month old son has severe chemical burns all over his privates and bottom. How and the world has no one out a stop to these diapers!? I researched a little about the Snug and Dry to find a lawsuit about this from 3-ish years ago and they're still causing children pain!? What is wrong with your company Huggies!?!?

Recommends this product  X No

Helpful?   Yes · 0     No · 0     Report

**Response from Huggies:**

Huggies® Brand · 3 months ago

Thank you for reaching out to us, Michelle. It breaks our hearts to learn of your son's discomfort, and I sincerely hope he feels better soon. The well-being of the families using our products is our number one concern and we take situations like this very seriously. Please know that the ingredients and materials used in all our Huggies® diapers are evaluated by pediatricians and safety professionals to ensure they are safe to use on even the most delicate skin. We can assure you our Huggies® products can't cause a chemical burn because they're made of materials which do not create any chemical reaction, nor will they react with stool or urine. We'd like to talk further about your experience to learn more about what occurred and help best. When you have a moment, please contact us by phone at 1-877-648-2484 (weekdays, 8 a.m. to 5 p.m. CST). Thank you.

10.     The foregoing comprise just a small sample of the total complaints that Defendant has received through its website alone. Defendant has also received reports of the same via retailers who sell the Class Product and forward customer complaints to Defendant, calls to Defendant's customer service line, correspondence to the same, parenting websites and blogs that it monitors, and online reviews posted to retail websites also monitored by Defendant. Defendant is also aware of the potential for the Class Product to harm via its own internal pre- and post-release testing.

11.     This is an action for damages and injunctive relief for harm suffered by Plaintiffs and putative Class members as a direct and proximate result of Defendant's negligent, willful, and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promotion, marketing, distribution, labeling, and/or sale of the Huggies brand Snug & Dry diapers.

12.     Accordingly, Plaintiffs bring this Class Action Complaint against Defendant, alleging the violations of: (1) California Legal Remedies Act ("CLRA")

Cal Civ. Code § 1750, *et. seq.*; (2) California's False Advertising Law (FAL"), Bus. Prof. Code § 17500, *et. seq.* and; (3) California's Unfair Competition Law ("UCL"), Bus. Prof. Code § 17200. Plaintiffs and Class members seek compensation for damages they incurred and continue to incur as a direct and proximate result of Defendant's unlawful acts and omissions. Plaintiffs further seek to enjoin Defendant from continuing the unlawful practices alleged herein.

13.     The allegations in this Complaint are based on the personal knowledge of Plaintiffs as to themselves, and on information and belief as to all other matters.

## II.    <u>JURISDICTION AND VENUE</u>

14.     This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act, 28 U.S.C. §§1332(d), 1446, and 1453(b). Plaintiffs allege that they and the Class members are citizens of different states from Defendant, and the cumulative amount in controversy for Plaintiffs and the Class exceeds $5 million, exclusive of interest and costs.

15.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because many of the acts and transactions giving rise to the violations of law complained of herein occurred in this District, and because Defendant: conducts business itself or through agent(s) in this District, by advertising, marketing, distributing and/or manufacturing its products in this District; and/or is licensed or registered in this District; and/or otherwise has sufficient contacts within this District to justify Defendant being fairly brought into Court in this District.

16.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B) whereby: (i) the proposed class consists of over 100 class members, (ii) a member of the putative class is a citizen of a different state than Defendant, and (iii) the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.

FIRST AMENDED COMPLAINT                    2:21-cv-01519-KJM-KMN

17.     The Court has personal jurisdiction over Defendant because the Product is advertised, marketed, distributed, and sold throughout California; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in California; Defendant is authorized to do business in California; and Defendant has sufficient minimum contacts with California and/or otherwise has intentionally availed itself of the markets in California, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant's activity within California is substantial and widespread. At all relevant times hereto, Defendant was a foreign corporation duly authorized to conduct business in the State of California.

18.     Pursuant to 28 U.S.C. § 1391(b)(2), this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiffs are citizens of California, reside in this District, and purchased the Class Product in this District. Moreover, Defendant distributed, advertised, and sold the Class Product in this District.

## III.   **PARTIES**

### A.   **Plaintiffs**

19.     Plaintiffs Kelly and Tawanna Rice are, and at all times relevant hereto have been, citizens of the State of California and residents of Sacramento County. Plaintiffs' baby son was born in May of 2021 and began wearing Huggies Snug and Dry diapers sometime after he and his mother came home from the hospital. Prior to wearing the Class Product, Plaintiffs' son had never experienced any kind of rash or adverse skin reaction. Before purchasing the Class Product, Plaintiffs specifically sought out a product that they believed would protect their child as he grew. Plaintiffs ultimately purchased the Class Product after viewing and, relying on the representations on the Huggies storefront on Amazon.com and throughout Defendant's pervasive print and television

marketing. These representations caused Plaintiffs to believe that Huggies brand diapers, and particularly the Snug and Dry diapers, were reputable and designed to be safe for the skin of babies and infants. Plaintiffs purchased the Class Product on Amazon.com from their home in Sacramento, California. Plaintiffs' Venue Declaration is attached hereto as Exhibit A.

20.     Almost immediately after using the diapers with their new baby, Plaintiffs noticed that he seemed uncomfortable but, remaining trusting of the Huggies brand, they were unable to discern what was causing his discomfort. Shortly after he began using the diapers, Plaintiffs' son began to develop severe and persistent rashes, lesions, blistering, and what appeared to be chemical burns on his skin in the areas covered by the diaper. Moreover, despite frequently changing the baby's diapers and keeping the affected area clean the adverse skin condition would not improve. Plaintiffs also applied Desitin diaper cream and Neosporin to the affected areas and ceased use of the baby wipes they had been using in an effort to help heal their son. Still, the injury not only persisted but continued to get worse. Not only did Plaintiffs' son have to suffer the physical discomfort from the injury but he also became sullen and withdrawn as a result. Concerned, Plaintiffs sought medical treatment and were prescribed a five-day course of antibiotics by their healthcare professional. Plaintiffs used the medicine as directed but the injury failed to respond to even the prescription medicine. Finally, desperate for a solution and having tried everything else to help their baby son, Plaintiffs switched to another brand of diaper and the injury to their son halted its progression and began to heal. Roughly two weeks after Plaintiffs switched diaper brands, their son's injuries had significantly improved and he returned to being a happy, healthy baby. Since ceasing use of the Class Product, Plaintiffs' son has not had any adverse skin reactions and his skin has remained healthy. Moreover, Plaintiffs have resumed use of the wipes that they earlier ceased use of and have used them without incident since ceasing use of the Class Product.

21.     Had Plaintiffs known of the propensity of the Class Product to harm babies and infants in the manner their son was harmed, Plaintiffs would not have purchased the product and certainly would not have paid the same price for the Class Product.

22.     Plaintiffs would only consider purchasing the Class Product in the future if it could be made to conform with the representations on the label and throughout Defendant's pervasive marketing scheme and actually be suitable for all children and all skin types.

**B.     Defendant**

23.     Defendant Kimberly-Clark Corporation is a global consumer products manufacturer organized under the laws of Delaware with its principal place of business at 351 Phelps Dr., Irving, Texas. Defendant designed, formulated, manufactured, marketed, and sold and continues to sell the Class Product in California and throughout the United States and worldwide. On information and belief, Defendant has unjustly profited from the sale of the Class Product and improperly retains millions of dollars of consumer's money as a result of its deceptive acts and practices detailed herein.

24.     The Huggies brand is one of the largest advertising spenders for consumer goods and spends tens of millions of dollars annually to create a pervasive marketing message that its diapers are safe, suitable for the sensitive skin of young children, are gentle, are free of harsh ingredients and that they are designed so that babies and infants who wear them will remain comfortable and healthy. In fact, Huggies was the first diaper brand to be featured in a super bowl advertisement in February of 2021.

25.     At all relevant times, Defendant was present and doing business within the State of California and sold its products throughout California and in each state of the United States. Defendant expected, knew, or should have been aware that its

FIRST AMENDED COMPLAINT                                    2:21-cv-01519-KJM-KMN

conduct would have adverse consequences within the State of California and in each state where it sold its products.

26.     Defendant's Class Products are sold at hundreds of local, national, and online retailers, including, but not limited to Costco, Walmart, Rite-Aid, Target, Amazon.com, and CVS, throughout the State of California and nationwide. Defendant advertises and promotes the Class Product within and throughout the State of California and nationwide. Defendant's promotional representations regarding the Class Products are incomplete, false, and misleading and the resulting economic harms are not reasonably avoided by consumers in California or nationwide.

## IV.    FACTUAL ALLEGATIONS

27.     Defendant's Snug & Dry diapers were designed by Defendant to incorporate its own patented chemical formulation layered within the diaper and which is intended to absorb excess moisture and prevent irritation and rashes. Parents further understand that by keeping their children's skin dry and clean, diaper rash will be minimized, and the sensitive skin of babies and infants will be protected. Unfortunately for parents and children alike, the Class Product does not minimize diaper rash but exacerbates it in certain babies and infants for as long as they wear the diaper. The resulting injury causes persistent blistering, peeling, lesions, bleeding, and/or what appear to be chemical burns and harms and disfigures the skin. In babies and infants who develop persistent adverse skin reactions from wearing the Class Product, the injury persists, sometimes for months, until the brand of diaper is changed. Though parents and medical professionals try a gamut of remedies, the only effective remedy to the persistent injury is to change the brand of diaper. It is only from that point on that the skin begins to heal and the child is able to feel comfortable once again.

28.     While using the Class Product as directed many babies and infants have experienced adverse reactions ranging from irritation and discomfort to peeling, burning, blistering, and temporary or permanent scarring. Additionally, the discomfort

and pain that results from these adverse skin reactions causes otherwise happy children to become sullen or reserved due to the persistent pain of peeling, blistering, and open sores. Despite receiving a significant number of reports from consumers regarding the propensity of the Class Product to injure babies and infants, Defendant not only fails to warn consumers of potential adverse reactions, they assure them the product is safe for even sensitive skin.

29.     Even without Defendant's representations concerning gentleness and suitability for babies and infants, no reasonable consumer would anticipate that a diaper would cause persistent contact dermatitis, peeling, blistering, and/or chemical burns to the most sensitive areas of a child's skin. Moreover, absent a disclaimer or warning on the Class Product label, parents simply do not connect the severe injuries experienced by babies and infants with their choice of diaper from what they believe is a reputable company with decades of experience manufacturing products for babies and infants and with a pervasive marketing message that their product is designed to keep children comfortable.

30.     In omitting and/or concealing known material information and inadequately providing safety information pertaining to the Class Products, Defendant intended to induce consumers to rely on incomplete information when deciding whether to purchase and use the Class Product. By so doing, Defendant engaged in conduct likely to mislead a reasonable consumer, including Plaintiffs and putative Class members. As a consequence, Plaintiffs and the putative classes were unable to reasonably avoid the harm resulting from Defendant's omissions and misrepresentations.

### A. Defendant has long had knowledge of the propensity of the Class Product to harm

31.     Defendant has long been aware of the propensity of the Class Product to harm the babies and infants who wear them. Defendant has received complaints dating back at least ten years from concerned parents who report that after switching to

- 11 -

Huggies Snug & Dry their child suddenly developed persistent and unusual rashes, peeling, blistering, bleeding, and/or chemical burns. Defendant's website is replete with consumer complaints and Defendant even interacts with the posters on its website and invites them to call in so that Defendant can gather further information. However, despite possessing this information for years, and professing that the Class Product is engineered for comfort, health, and protection, Defendant does not disclose at the time of transaction or otherwise, that some babies and infants may be harmed as a result of their wearing the Class Product or that Parents should cease use of the product if their child experiences certain symptoms. Defendant intentionally omits this information at or prior to the time of sale as it knows that warning parents of such facts may result in diminished sales.

32.     Below is a sample of complaints left on the Huggies brand Class Product webpage, owned, operated, and maintained by Defendant[2] For over ten years, parents have been complaining to Defendant of the diaper's propensity to injure their children. Notably, many of the reviewers note that as soon as they ceased use of the Class Product the severe skin reactions began to heal. Ultimately, as a consequence of the injury visited upon their children, parents are left with an unusable product that has no value and for which they overpaid:

> I have used these diapers for a few days and they leave weird, gooey crystals all over the babies genitals and they are hard to remove and my son has a terrible rash that he has never had before! It is from the diapers! They should be recalled! **[January 2021]**;

> We have been using Huggies Little Snugglers, but every time we use the Snug and Dry my baby girl gets an extremely bad diaper rash. This time is worse then last time, not quite bad enough to visit the Dr. but it is a close call. Will not be using the Snug and Dry again, but will be returning to Little Snugglers. **[December 2020]**;

> I switch between huggies little movers and snug and dry and I just started putting two and two together that every time we use a box of snug and dry it cause a rash and a trip to the doctors office to get a prescription cream. The last time we used snug and dry diapers was the worst rash my daughter has gotten. The skin actually broke on her feminine parts

---

[2] https://www.huggies.com/en-us/diapers/snug-and-dry

and was bleeding. Please be cautions of these diapers. I be seen lots of other complaints about these diapers, is nothing be done about this? **[November 2020]**;

The blue dye on the inside of the diaper causes rashes for girls. Love the other buggies diapers though **[August 2020]**;

I bought these for my baby thinking they would work great because I'm a big fan of Huggies swaddlers. Big mistake, my 10 week old baby broke out in a horrible rash. Never again will I purchased these. Such a waste of money. Sad part is I received a few boxes as gifts and they will go to waste. **[August 2020]**;

Just tried these on my 9 month old and instantly got a very bad diaper rash almost like a chemical burn. Will not be using again **[August 2020]**;

Bought a box of Huggies snug and dry size 4 for my 1 year old son and after the second diaper change after him only wearing it for an hour because I believe the 12 hour dryness claim to be a crock of !&?$ noticed what appeared to be chemical burns or a severe rash between his legs I am serious considering taking legal action tried calling the call centre but is closed I will be contacting someone about this I urge anyone to take severe caution when using this product seeing the pain my son was in from a diaper that claims to keep him snug and dry broke my heart **[August 2020]**;

We have used this diaper for 18 months and unfortunately now they have given my son a chemical burn. So just be careful. This was our first box with an issue. I'm also now left with an entire box of diapers we can't use! **[August 2020]**;

I was using pampers diapers when my girl was born and thought they were great but with the new quarantine situation I could no longer locate them and therefore started using the Huggies snug and dry. That's where my problem began my daughters private area turned completely red and so I just bought an a&d diaper ointment and thought nothing of it 5 days pass and her private area is completely raw like so pink to the point that it's painful for her I then thought that maybe it's the diapers and proceeded to use my last pampers diapers that was in a size 2. Her. Rash. Cleared. Up. I'm so disappointed now because I bought the largest box of Huggies I could find and now I can't use it. **[One year ago]**;

I bought these diapers for my baby girl. Hadn't had any other issues with other huggies diapers, so I bought the 144 pack. Turns out it is giving her a rash on her bottom. I'm thinking because of the blue patch inside that quicken the moisture away and "dry". Her bottom is all red and sore. So now I have tons of diapers that she can't use and I can't return. **[Two years ago]**;

FIRST AMENDED COMPLAINT                    2:21-cv-01519-KJM-KMN

My daughter broke out in a horrible rash. It looked more like a chemical burn and woke her up in the middle of the night. We had just bought these diapers and bought a month supply. It is horrible. We immediately changed the diapers to what we were using before and the rash/burn cleared up. I would definitely NOT recommend these diapers to anyone. **[Three years ago]**;

I have 2 children and have always been big on the Huggies brand of diapers. Until now, I bought my oldest son (18 months) 2 packs of Huggies Snug and dry diapers after he started wearing them he began getting what looked to be a rash on his leg around where the edge of the diaper hit. And it had since turned into what looks like a chemical burn Type rash. Will not be using this brand of Huggies ever again. If any Huggies at all. **[Three years ago]**;

I bought the snug and dry diapers for my toddler 2 months ago through Amazon subscription. I was excited bc it was a great savings compared to the luvs we were buying from Walmart. He never has a diaper rash, but I started noticing his bottom stayed red all of sudden and he would cry(sometimes scream) when I changed him. It seemed odd but I hadn't even thought it may be the diapers.
Well we ran out before the next shippment came and so we bought our usual luvs. He had zero issues with a diaper rash during this time.
The next box arrived last week. After just 2 days of using the huggies again his bottom is bright red! He screams when he soils the diaper. He screams when we change and bathe him so much that his little body is shaking! It is absolutely the diapers causing the rash! I'm have about 160 diapers left and I'm throwing them out!! **[Three years ago]**;

I bought this product for my son as we have always used huggies and when we saw the Mickey Mouse design we fell in love... up until we used them.... WORST MISTAKE EVER. Within the space of his day sleep (that and overnight are the only time he's in nappies) it had burnt through his skin leaving him with a festy blustery sore which if I'm lucky will repair within 3 weeks. I'm very very deterred from buying anything even remotely huggies related anymore and I have made sure I have publicly announced this terrible and child deforming product. I am disgusted. **[Three years ago]**;

I was using this product & started to notice a rash on my DS. Then I stopped for a bit then used it again to make sure it was the snug n dry diapers. & it was ! Other people I kno agree **[Four years ago]**;

I bought 2 weeks ago my son got horrible rashes. Leaked everywhere. They changed to red black bit sure if quality is not equally good as previous. **[Four years ago]**;

FIRST AMENDED COMPLAINT                        2:21-cv-01519-KJM-KMN

My son instantly got a severly swollen, red blistering rash on every part of his skin that the diaper made contact with after getting wet. He's in a lot of pain. After bathing, he's walking like he's in lots of pain, still won't sit and is laying down with his blistered butt in the air. After the first diaper change, changing back to little movers, the swelling has gone down but the redness and blistering is still there. I'm so upset that my son is in so much pain and possibly for days! **[Four years ago]**;

I bought these diapers because I couldn't beat the price. At Walmart there were $24.95. I usually spend about $40 on a box of diapers. My son is usually okay with huggies. He's only been wearing these diapers for three days now and he has severe burns on his male areas. Every time he pees currently he's been screaming from the pain. He has blisters and is all red. He was perfectly fine before these diapers. The doctor said he had a chemical burn. Tomorrow we're switching back to his old diapers. Usually he's really good with huggies and we've had nothing but luck but for some reason this one wasn't good at all. **[Four years ago]**;

These diapers were a great fit for my daughter, and ultra absorbent, but whatever is in the diaper caused an allergic reaction after wearing them. I caution those who have babies with sensitive skin to not use these. My daughter doesn't even have sensitive skin and she got a rash! If she didn't break out from the diaper, we probably would've continued using these as opposed to buying another type of Huggies brand diaper. :) **[Six years ago]**;

my daughter got a horrible chemical burn from these... HATE them!!!!!! **[Seven years ago]**;

Bought a bulk poack of 176 of these because they were on sale. I quickly figured out why. Not even 48hrs in these and my poor daughter (1mo old) had blisters on her bottom. Her top layer of skin was peeling off and she was bleeding. I quickly rushed her to her pediatricians office and they prescribed us a cream for 2nd degree burns. This is bull!!! And of course since I don't have the receipt and discarded the box, nothing will be done. I would have saved the box but we have diaper storage on the changing table. So here we are stuck with over 150 diapers and out $35. Thanks a ton Huggies. **[Seven years ago]**;

the diapers fit perfectly but they caused a severe diaper rash on my daughter. ive also read online that this particular brand can cause chemical burns in infants. **[Eight years ago]**;

I have been using both huggies & pampers for the past year with no problems (leakage,rashes.etc). But about 4 wks ago I brought pampers and notice very bad itching, redness, blisters it is horrible. Then we came to the conclusion it was the diapers. So I when brought huggies snug & dry and its having the same effect. Wish i would have researched huggies too. We trust these top brands and now my baby is miserable, we'll losing sleep and $$$$$ **[Eight years ago]**;

I started out with my baby wearing Huggies Pure and Natural Diapers. They worked a great deal better than other Natural diaper brands on the market on the shelves. I still needed something a bit more absorbent though and preferred something still more natural. I changed to an All Natural Disposable diaper I had to order online and couldn't have been happier. I misjudged my order and was going to be 4 days without diapers. I went to my local store to buy a small package of Huggies to get through the next 4 days. Snug and Dry was the smallest amounts I could purchase and figured they would work for 4 days. I was wrong. After only 3 days of use my 7.5 month old had her first case of diaper rash, EVER. Her bottom is raw and bleeding. Just from using diapers for 3 days. That just shows what a horrible product you are selling for babies skin. Please think about selling your Natural diapers in a variety of package sizes, smaller and larger as well. **[Eight years ago]**;

The first time I bought this specific type of diapers my daughter got a really bad diaper rash and it took 3 months for it to go away! I went to the doctor with her every week and she was prescribed 3 different butt paste. I did not think the diapers had done it so I went back to the Hughes slip-ons. Just a week ago I got another box of the snug and dry (all they had in the store) and the diapers rash is back! And it is worst!!!!! Nothing makes this rash go away besides changing her diapers back to slip ons! I will never buy snug and dry ever again! Huggies, I love you but get your act together!!!!!! **[Eight years ago]**;

We have been using huggies when ever we are not using cloth, this snug and dry is the only diaper to ever give her a diaper rash. We have used the little movers and the all natural diapers and they have never caused a problem but the snug and dry are horrible for her. **[Nine years ago]**;

I used Huggies on my son and loved them. Now with my daughter anytime she wears a huggies diaper, she get an instant rash! It's crazy. Every area that contacts the diaper is now red. She was completely clear and after wearing one huggies she got a horrible rash. **[Ten years ago]**;

Not sure if it was the RashGaurd Ingredients or what, but the Huggies Snug and Dry gave my LO a rash... it went away when we switched to a different type of Huggies, though. Love Huggies, just not this kind! **[Ten years ago]**.

FIRST AMENDED COMPLAINT                           2:21-cv-01519-KJM-KMN

33.     Target.com and other retailers are replete with reviews from parents[3] concerned about the harm experienced by their children after they used the Class Product. And just as with the Huggies website, Defendant interacts with these reviewers, denies that the diaper could be responsible and invites further information:

### not snug and not dry

★☆☆☆☆   ⊗ Would not recommend

calidreamin4946 - 2 years ago, Verified purchaser

I agree with another's review to a T. I have the exact problem. I have been using Huggies little movers diapers for awhile now and have worked out amazing. No leaks, no blow outs, no rashes. We decided to try snug and dry diapers and I'm very disappointed with them. The price was great for QTY in box, but they leak even with one pee and sag like she has a big poop in there when she does not. If I want to use overnight, forget it. Soppy mess and leaves wetness on my arm when I pick her up from crib. Snug and dry......neither. She also developed a bad rash and I will throwing the rest away. The difference between the two diapers is crazy. I will not be purchasing snug and dry again.

 1 reply from Huggies team - 2 years ago

While we're glad that you enjoy our Huggies® Little Movers diapers, we're disappointed to hear that this was your recent experience. Your daughter's health and well-being is our top priority, and we sincerely hope that she feels better soon. While irritation and leaks can happen for many reasons, and it can be hard to pinpoint why, you can rest assure that all of the ingredients and materials used in our diapers are thoroughly evaluated to be gentle on sensitive skin. We hope you'll reach out to us by phone at 1-877-648-2484 (weekdays, 8 a.m. to 5 p.m. CST) so we can learn more about your experience and help. Thank you.

### Avoid!

★☆☆☆☆   ⊗ Would not recommend

Sarah - 2 months ago

Gave my 9 month old girl an awful rash and chafing on her bottom. She's never reacted to a diaper like this. Horrible.

 1 reply from Huggies team - 2 months ago

Thanks for letting us know, Sarah. The health and well-being of little ones are our top priority, which is why each product goes through rigorous tests to ensure they're gentle on baby's delicate skin. We know that there are many reasons irritation can occur and it's sometimes hard to pinpoint exactly why. So we can learn more about your experience, please give us a call at 1-877-648-2484 (weekdays, 8AM-5PM CT). We look forward to talking to you.

---

1    34.    Amazon reviewers similarly complain of harm to their children

2   resulting from use of the Class Product:



**Caitlyn Renee**
⭐☆☆☆☆ **These diapers are horrible!**
Reviewed in the United States on August 25, 2019
Size: Size 4 (184 Count)  |  Style: OLD One Month Supply Pack  |  Verified Purchase

These huggies snug and dry are not worth it to me. They can not hold any urine at all after so much. And these also gave my daughter a blistering rash after changing her a lot more the huggies little movers.



**Krysta Wake**
⭐☆☆☆☆ **Bad diapers**
Reviewed in the United States on December 17, 2019
Size: Size 4 (184 Count)  |  Style: OLD One Month Supply Pack

Some reason this type of huggies made my baby constantly have little beads all over her every time I changed her diaper. (even if it was just a little pee in the diaper, I didn't let her sit in the wet diaper.) and it cause so much irritation and little rashes on her.



**Amazon Customer**
⭐☆☆☆☆ **Bad break out outside and inside of diaper...) :**
Reviewed in the United States on December 28, 2019
Size: Size 4 (184 Count)  |  Style: OLD One Month Supply Pack

I thought they absorbed well, but my 17 month old had gotten alot of bumps which i thought was a heat rash but realized it was a bad break out all around his legs out side and inside of the diaper... he started pulling and taking the diaper off, which he has never done. The only reason i went with these was cause i love huggies snugglers and saw that these were cheaper but still huggies. I will be going back to huggies snugglers! They are the best! Never had any issues with them. It is worth the the extra money. If you want to try something leas expensive maybe think about trying the Kirkland brand as they are as good as well:) Hope this helps...

**CASSIA**
⭐☆☆☆☆ **Not a good buy**
Reviewed in the United States on February 4, 2020
Size: Size 4 (184 Count)  |  Style: OLD One Month Supply Pack  |  Verified Purchase

The diaper does not hold 1 8 ounce bottle of urine over the span of 3 hrs. My girls had rashes and blisters from using this brand. They've also exploded on them numerous times even after changing them during the night.



**MICAH JAMES**
⭐☆☆☆☆ **Warning for reaction**
Reviewed in the United States on February 6, 2020
Size: Size 4 (184 Count)  |  Style: OLD One Month Supply Pack  |  Verified Purchase

These caused my daughter to become to red and inflamed. Enough to cause a lot of crying from it. Whatever is in that blue pad in the center must be bad

35.    Defendant's Amazon.com storefront[4], promises parents that Huggies brand diapers are gentle, offer "unbeatable protection," absorb excess moisture, and are free of allergens like latex, parabens, fragrances, and elemental chlorine. These representations help convince consumers that the Class Product is suitable for sensitive skin despite Defendant's knowledge that they cause significant, unusual and unexpected rashes, peeling, and/or chemical burns:

---

[4]https://www.amazon.com/Huggies-Snug-Baby-Diapers-Newborn/dp/B0839BSJP7?ref_=ast_sto_dp&th=1&psc=1

FIRST AMENDED COMPLAINT                    2:21-cv-01519-KJM-KMN



**Snug & Dry™**
Unbeatable protection


Absorbs in Seconds


Contoured Shape Diaper™


Leak Lock® System


Free of Parabens, Fragrance, Elemental Chlorine & Natural Rubber Latex


Wetness Indicator

36.    As consumers checkout from Defendant's Huggies brand Amazon.com storefront, they are presented with photos and text that assure parents that the Class Product contains "No Harsh Ingredients – Hypoallergenic and free of fragrances, parabens, elemental chlorine & natural rubber latex."

Newborn (108 Count)
$26.45
($0.24 / Count)

| | |
|---|---|
| Size | Newborn (108 Count) |
| Recommended Uses For Product | Baby Diapers |
| Age Range (Description) | Baby |
| Brand | HUGGIES |
| Color | White |

**About this item**
- Huggies Snug & Dry diapers size newborn fit babies up to 10 lb. (4.5 kg)
- Up to 12 Hours of Day or Night Protection – Huggies trusted Leak Lock System helps prevent leaks for up to 12 hours, day or night
- Absorbs in Seconds – Huggies Snug & Dry absorbs wetness in seconds to help keep baby dry & comfortable, plus wetness indicator
- Improved Absorbent Technology – Now with improved leakage protection,* Snug & Dry helps get baby drier faster & stay dry longer (*sizes 3-6)
- Contoured Shape – Snug & Dry baby diapers have a contoured shape for better leakage protection while sleeping, crawling & walking
- No Harsh Ingredients – Hypoallergenic and free of fragrances, parabens, elemental chlorine & natural rubber latex
- Featuring fun and exclusive Disney Mickey Mouse designs
- Packaging may vary from image shown

Compare with similar items

37.    The issue does not appear to be limited to the United States and Defendant should be on notice of international reports of injury resulting from the Class Product. On January 25 of 2019 an Australian website published the story[5] of a three-year-old girl who suffered from third degree chemical burns as a result of her wearing Huggies Dry Nites diapers, which, on information and belief, use the same chemical absorbent as does the Class Product. The story details not only the horrific injury to the child but also the apparent indifference on the part of Defendant who, despite the many complaints it has received over the years, called it an "isolated

---

[5] Huggies: Girl gets third degree chemical burns after wearing nappy - Kidspot

FIRST AMENDED COMPLAINT                    2:21-cv-01519-KJM-KMN

1  incident."

2      38.    Defendant offered and continues to offer consumers a misleading

3  response to their complaints and denies that the diapers could be responsible for the

4  reactions that babies and infants are experiencing as a result of wearing the Class

5  Product. Defendant does so in an effort to actively conceal from discovery the true

6  qualities and characteristics of the Class Product. Defendant essentially brushes away

7  these concerns but collects and analyses information about these injuries which they

8  then conceal from the public.

9              **B.    Defendant's marketing is misleading and conceals the
               true nature of the Class Product**

10

11      39.    Defendant is in the business of developing, designing, manufacturing,

12  marketing, advertising, and distributing Huggies diapers and other personal care and

13  cleaning products to consumers. Huggies brand diapers, including the Snug & Dry

14  diapers, are among the top-selling diapers in the country and is sold in supermarkets,

15  convenience stories, and pharmacies throughout the United States.

16      40.    Through its advertising and marketing, Defendant promoted and

17  continues to promote Huggies as being safe and comfortable for infants. The Huggies

18  website assures consumers that "Huggies helps keep skin clean and healthy," but this

19  statement is not qualified and no warning allows consumers to identify that the Class

20  Product may be the source of their child's injury, allowing the harm to continue

21  unnecessarily.

22  ## Huggies helps keep skin clean and healthy.

23      41.    Moreover, Defendant assures parents that Huggies brand diapers are

24  gentle, which creates the misleading impression in the minds of consumers that they

25  will not cause the injuries complained of herein:

26

27  ## Shop Huggies® Diapers

28  From day one to the last day of potty training, we have something gentle for your baby to wear every step of the way

- 20 -

FIRST AMENDED COMPLAINT                    2:21-cv-01519-KJM-KMN

42.     Further still, Defendant is well aware that skin types and their sensitivities are unique amongst people but still fails to qualify the misleading impression its pervasive marketing statements create:



Skin is weird

Skin. It's soft and delicate, and you're covered in it. But don't worry. We've got diapers and wipes to help keep it clean and healthy. We've got you, baby.

43.     Yet, despite Defendant's awareness of the propensity of its products to harm children, it neither discloses this fact to consumers nor does it qualify any of its affirmative representations concerning its suitability for babies and infants. At the very least, Defendant should include disclaimer language to allow parents to identify the source of their children's injury and cease use of the product to prevent ongoing and future harm. At the very least, parents of injured children could identify the source of the injuries and mitigate further harm if they were put on notice via a simple label disclaimer. But Defendant does not do so because it fears a loss of sales that would result should it disclose what it knows about the Class Product's propensity to harm.

44.     Plaintiffs and the Class did, and a reasonable consumer would, expect the Product to be safe and comfortable for infants. Irrespective of any affirmative representations made by Defendant on the Class Product label or otherwise, no reasonable consumer would expect the Product to cause prolonged painful rashes,

persistent contact dermatitis, blistering, bleeding, and/or chemical burns that necessitate medical care. Defendant's omissions are particularly egregious because they harm a vulnerable population, i.e., young children and their loving parents.

45.     As a result of Defendant's affirmative representations and omissions, Plaintiffs and Class members were misled into purchasing an unsafe product, which did not provide the attributes and benefits that were represented to them and which they reasonably expected to receive and believed they were receiving. As a result of Defendant's deceptive acts and practices, Plaintiffs and Class members purchased a product that was not safe for its intended use, did not offer the qualities for which it had been advertised, and failed to include necessary language on the Class Product labels.

46.     Defendant failed to warn consumers that the Product carried the unreasonable and unanticipated dangers experienced by Plaintiffs and members of the Class.

47.     Defendant owed a legal duty to Plaintiffs and Class members to exercise reasonable care by developing, manufacturing, and marketing a product that was safe for its intended use. Defendant knew or should have known that its failure to ensure reasonable safety standards would cause serious pain and injury to vulnerable infants and cause economic and other harm to the parents of those infants. Defendant further owed a legal duty to warn consumers of known risks associated with the Class Product, particularly in response to consumer complaints of harm.

48.     Plaintiffs and Class members would not have purchased the Product had they known of its propensity to harm.

49.     Plaintiffs and Class members had no reasonable way of independently discovering that the Class Product did not conform to Defendant's representations and had a substantial chance of harming the very children that Parents sought to keep safe from harm.

FIRST AMENDED COMPLAINT                                    2:21-cv-01519-KJM-KMN

50.     Defendant breached its duty to consumers, which directly and proximately resulted in Plaintiffs and other Class members suffering injury in fact, physical injury and suffering, financial injury, the personal expenditure of time and resources, and mental anguish.

51.     Plaintiffs and Class members were injured financially because the condition of the Class Product, as it left the possession and control of Defendant, was in an unreasonably dangerous condition, contained unreasonably harmful ingredients, and/or was not properly labeled. Defendant's Class Product has little to no value to consumers as no parent would continue to use diapers that do, or even could, cause the type of harm experienced by Plaintiffs' son. Because diapers that cause an unusual rate of rashes, peeling, blistering, and/or burning are essentially unusable, the Class Product has little to no value and Plaintiffs and members of the Class were deprived of the benefit of their bargain.

## C.     Tolling of the Statute of Limitations

52.     Defendant has concealed from discovery the material facts identified herein by repeatedly affirming its representations as to gentleness, suitability for sensitive skin, a focus on keeping babies' and infant's skin clean and healthy, the absence of harsh ingredients, and other statements that run contrary to the facts known to Defendant. Additionally, by denying to reviewers who complain of the issues identified herein that Huggies could cause any reaction at all and refusing to include a warning regarding the possibility of severe rash, blistering, peeling, and/or chemical burns Defendant engaged in active concealment.

53.     Moreover, even through the exercise of ordinary diligence, Plaintiffs and the other Class members could not have reasonably discovered, and could not have known of facts that would have caused a reasonable person to suspect, that Defendant failed to disclose material information within its knowledge about the propensity of the Class Product to harm.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.    CLASS ACTION ALLEGATIONS

54.        Plaintiffs seek to represent a class consisting of:

All persons or entities who purchased the Class Product in California during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the California Class")

55.    The proposed Class excludes current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which it has or has had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

56.    Plaintiffs reserve the right to revise Class definition and/or amend the Complaint based on facts learned in the course of litigating this matter.

57.    Class members are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through the appropriate discovery, Plaintiffs believe that there are thousands of members in the proposed Class. Other members of the Class may be identified from records maintained by Defendant and may be notified of the pendency of this action by mail, or by advertisement, using the forms of notice customarily used in class actions such as this.

58.    Plaintiffs' claims are typical of the claims of other Class members as all Class members are similarly affected by Defendant's wrongful conduct.

59.    Plaintiffs will fairly and adequately protect the interests of Class members in that Plaintiffs have no interests antagonistic to those of other Class members. Plaintiffs have retained competent counsel experienced in class litigation.

60.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual

litigation make it impracticable for them to individually seek redress for the wrongful conduct alleged herein. If class treatment of these claims were not available, Defendant would likely unfairly receive hundreds of thousands of dollars or more in improper charges.

61.    Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the common questions of law and fact to the Class are:

i.    whether Defendant made misrepresentations and/or deceptive omissions concerning the safety and efficacy of the Product;

ii.    whether Defendant's marketing, promotion and advertising of the Product is false, fraudulent, deceptive, unlawful, unfair, or misleading;

iii.    whether Defendant's marketing, promotion, advertising and sale of the Product is and was a deceptive act or practice in the conduct of business directed at consumers, giving rise to a violation of Cal. Civ. Code § 1750, *et seq.*;

iv.    Cal. Bus. & Prof. Code § 17500, *et seq.*

v.    whether Plaintiffs and Class members sustained injuries or damages as a result of Defendant's false advertising of the Product;

vi.    whether Plaintiffs and Class members are entitled to equitable relief and injunctive relief enjoining Defendant from continuing to engage in the fraudulent, deceitful, unlawful and unfair common scheme as alleged in this Complaint; and

vii.    whether Defendant's conduct rises to the level of reprehensibility under applicable law such that the imposition of punitive damages is necessary and appropriate to fulfill the societal interest in punishment and deterrence, and the amount of such damages and/or their ratio to the actual or potential harm to the Class.

62.    The prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its

maintenance as a class action.

63.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

64.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

65.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

66.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.

67.     Defendant's conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**(CAL. CIV. CODE §§ 1750, *et seq.*)**

68.     Plaintiffs restate and reallege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

69.     Plaintiffs bring this cause of action on behalf of themselves, and all similarly situated residents of the state of California for violations of California's Consumer Legal Remedies Act ("CLRA"), which prohibits misrepresentations in commerce and unfair or deceptive business practices.

70.     The Class Product is a "good" as defined by California Civil Code § 1761(a).

71.     Defendant is a "person" as defined by California Civil Code section 1761(c).

72.     Plaintiffs and Class members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased the Class Product for personal, family, or household use.

73.     The sale of the Class Product to Plaintiffs and the putative Class members is a "transaction" as defined by California Civil Code § 1761(e).

74.     Defendant's acts and practices, which were intended to result, and which did result, in the sale of the Class Product, violate the Consumer Legal Remedies Act for at least the following reasons:

   a.     Defendant represented that the Class Product has characteristics, uses or benefits which they do not have;

   b.     Defendant advertised their goods with intent to not sell them as advertised;

   c.     Defendant represented that their products are of a particular standard, quality, or grade when they are not; and

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

d.    Defendant represented that its goods have been supplied in accordance with a previous representation when they have not.

75.    As described above, Defendant knew that the Class Product has a propensity to cause severe, unanticipated, and harmful reactions when used as directed, but concealed and failed to adequately disclose this fact to consumers at the point of sale, on the product label, through promotional efforts, or otherwise. Defendant intended that Plaintiffs and the members of the proposed Class rely on its affirmative representations and/or the omission of these material facts in deciding to purchase the Class Product.

76.    By deceptively omitting material information regarding the propensity of the Class Product to cause sudden, persistent, and severe reactions to the skin of infants and babies, Defendant violated California Civil Code sections 1770(a)(5), (7), (9), and (16).

77.    In failing to disclose the nonconformity of the Class Product to its label and/or propensity of the Class Product to harm, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

78.    The facts concealed or not disclosed by Defendant to Plaintiffs and the Class are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's products rather than that of a competitor, or pay a lesser price for the products.

79.    Defendant made unambiguous representations as to the safety of the Class Product while suppressing some material facts regarding the severity and frequency of the skin reactions caused by the Class Product.

80.    Plaintiffs and the Class members were harmed and suffered actual damages as a result of Defendant's unfair competition and deceptive acts and practices. Had Defendant disclosed the true nature and/or danger inherent in its products, Plaintiffs and members of the Class would not have been misled into purchasing

Defendant's products or would have paid significantly less for them.

81.     Plaintiffs, on behalf of themselves and all other similarly situated California consumers, and as appropriate, on behalf of the general public of the State of California, seek injunctive relief prohibiting Defendant from continuing these unlawful practices pursuant to California Civil Code § 1782(a)(2).

82.     Plaintiffs provided Defendant with notice of its alleged violations of the CLRA pursuant to California Civil Code § 1782(a) via certified mail, demanding that Defendant correct such violations. As Defendant has made no answer within 30 days of its receipt of the CLRA demand, Plaintiffs now seek all available damages under the CLRA for all violations complained of herein, including, but not limited to, actual and statutory damages, punitive damages, attorney's fees and costs and any other relief that the Court deems proper.

## SECOND CAUSE OF ACTION

## VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW

## (CAL. BUS. & PROF. CODE § 17500, *et seq.*)

83.     Plaintiffs restate and reallege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

84.     Plaintiffs bring this cause of action on behalf of themselves and all similarly situated consumers for violations of California's False Advertising Law ("FAL").

85.     California's FAL prohibits any statement in connection with the sale of goods "which is untrue or misleading."  Cal. Bus. & Prof. Code §17500.

86.     The FAL further prohibits disseminating within or from California, or any state, any statement which is untrue, or misleading, and which the disseminator knows, or should know, to be untrue or misleading, in connection with commercial advertisements.

87.     As set forth herein, Defendant's claims regarding the safety and efficacy

- 29 -

of the Class Product are literally false and likely to deceive the public. Absent qualification, these claims are false and misleading because the Class Product does harm a significant number of users and the representations as to the safety and gentleness of the product are contrary to the known hazards associated with the Class Product.

88.     Defendant knows, or should know, of a not insignificant number of reports from affected consumers that the Class Product is harming their users and that the Class Labels are inadequate, misleading, and false. Defendant receives information pertaining to injuries associated with use of the Class Product through call-in lines, website reviews, consumer complaints generally, and have received and compiled these complaints from the United States and other parts of the world where Defendant sells the Class Product.

89.     Defendant's claims that the Class Product are "gentle," "keep skin clean and healthy," and offer "unbeatable protection" are misleading and/or untrue. Such claims cause consumers to believe that the Class Product is gentle, appropriate for sensitive skin, and actually protects and promotes skin health. Clearly, these claims are misleading as they tend to obscure any inference that the Class Product are anything but safe. Defendants knew, or reasonably should have known, that these claims were untrue or misleading.

90.     Defendant's conduct is ongoing and continuing and the threat of imminent harm to uninformed consumers is substantial, such that prospective injunctive relief is necessary. Such injunctive relief is necessary to prevent consumers who rely on the Class Product labels from being harmed by unanticipated adverse skin reactions. Injunctive relief would prevent future harm by requiring Defendants to disclose known hazards and admonishing consumers to conduct a preliminary skin test to determine the Class Product's suitability for their particular skin. Further, Plaintiff and putative Class members desire to purchase the Class Product in the future if the products could be made to conform with the representations of the Class Product

labels.

91.     Plaintiffs and members of the Class are entitled to injunctive and equitable relief, and restitution/disgorgement in the amount they spent on the Class Product in addition to all other relief afforded by the Court.

## THIRD CAUSE OF ACTION

## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
### (CAL. BUS. & PRO. CODE §§ 17200, *et seq.*)

92.     Plaintiffs restate and reallege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

93.     Plaintiffs bring this cause of action on behalf of themselves and all similarly situated consumers for violations of California's Unfair Competition Law ("UCL").

94.     Defendant has violated and continue to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq., which prohibits unlawful, unfair, or fraudulent business acts or practices.

95.     Defendant's acts or practices, as alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices, in violation of the Unfair Competition Law.  In connection with the sale of the Class Product to Plaintiff and the Class members, Defendant failed to disclose, on the Class Product labels or otherwise, material information about the Class Product. Defendant failed to disclose, and/or concealed, that the chemicals and/or formulations used in the Class Product pose a safety hazard to a substantial number of consumers.

96.     Defendant knew the Class Product would harm potential and actual consumers, did not meet consumer expectations regarding the anticipated risks associated with using diapers formulated for infants and babies, and lacked the necessary disclosures to allow consumers to make reasonably informed decisions about whether to purchase or use the Class Product.

97.     Defendant made unambiguous representations to consumers to ensure them that the Class Product are safe for even the most sensitive skin while suppressing some material facts regarding the severity and frequency of the adverse skin reactions caused by the Class Product and known to Defendant.

**Unlawful Prong**

98.     Defendant's practice of marketing the Class Product as being of a particular standard and quality and omitting material information regarding the defective and/or harmful nature of the ingredients used in the Class Product is prohibited by Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16), and is therefore an "unlawful" business practice in violation of the UCL.

99.     Defendant's deceptive business acts and practices regarding the sale of the Class Product and/or omissions regarding the propensity of the formula used in the Class Product to harm consumers violate Cal. Bus. & Prof. Code § 17500, *et seq*., and are therefore "unlawful" business practices.

100.    These deceptive business acts and practices, including the misleading materials, advertisements, labels, and other inducements were directed at consumers in the State of California, and nationwide, by Defendant.

101.    As a direct and proximate result of Defendant's "unlawful" business practices as alleged herein, Plaintiffs and each Class member have been wrongfully deprived of money and/or property. Plaintiffs and each Class member suffered an injury-in-fact as a result of Defendant's misleading and deceptive advertising, and omissions of material facts regarding the propensity of the formula used in the Class Product to harm consumers. Had Defendant not falsely represented the Class Product as being of a particular standard and quality that they in fact were not, Plaintiffs and members of the Class would not have purchased the Class Product, or they would have paid significantly less.

**Unfair Prong**

102.   Plaintiffs and the Class members reasonably expected the Class Product to be of a certain quality and standard, and that the Class Product would not create a sudden and severe skin reaction, given that they are marketed and priced as a safe and trusted product.   This is the reasonable and objective consumer expectation for children's diapers advertised as Defendant advertised the Class Product.

103.   Defendant knew that the Class Product were inherently dangerous and had a propensity to cause sudden and severe adverse skin reactions. Defendant made unambiguous representations as to the safety of the Class Product while suppressing some material facts regarding the severity and frequency of the skin reactions caused by the Class Product.

104.   By failing to disclose the defective nature of the Class Product, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

105.   Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the purchasing public.

106.   Defendant's marketing practices and omission of material facts regarding the inferior quality and propensity of the Class Product to harm is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

107.   Plaintiff and Class members who purchased the Class Product had no way of reasonably knowing that the diapers were defective and posed safety risks due to Defendant's deceptive marketing, advertising, and/or omission of material information.   Thus, Plaintiff and Class members could not have reasonably avoided the injury they suffered.

108.   The gravity of harm to Plaintiffs and the Class greatly outweighs any countervailing benefits to Defendant, competition, or the consumer marketplace

1

generally.

2

**Fraudulent Prong**

3

109.    Defendant knew that the Class Product were inherently dangerous and

4

had a propensity to cause sudden and severe adverse skin reactions. Defendant made

5

unambiguous representations as to the safety and suitability of the Class Product while

6

suppressing some material facts regarding the severity and frequency of the skin

7

reactions caused by the Class Product.

8

110.    By failing to disclose the defective nature of the Class Product,

9

Defendant has knowingly and intentionally concealed material facts and breached its

10

duty not to do so.

11

111.    Defendant's unfair and deceptive acts or practices occurred repeatedly

12

in Defendant's trade or business and were capable of deceiving a substantial portion

13

of the purchasing public.

14

112.    Defendant's marketing practices and omission of material facts

15

regarding the inferior quality and propensity of the Class Product to harm is immoral,

16

unethical, oppressive, unscrupulous, and substantially injurious to consumers.

17

113.    Plaintiffs and Class members who purchased the Class Product had no

18

way of reasonably knowing that the diapers were defective and posed safety risks due

19

to Defendant's deceptive marketing, advertising, and/or omission of material

20

information.  Thus, Plaintiffs and Class members could not have reasonably avoided

21

the injury they suffered.

22

114.    The gravity of harm to Plaintiffs and the Class greatly outweighs any

23

countervailing benefits to Defendant, competition, or the consumer marketplace

24

generally.

25

115.    Defendant's actions alleged herein violate the laws and public policies

26

of California, as set out throughout this Complaint.

27

116.    As a direct and proximate result of Defendant's unfair and deceptive

28

FIRST AMENDED COMPLAINT                              2:21-cv-01519-KJM-KMN

practices, Plaintiffs and putative Class Members have suffered and will continue to suffer actual damages.

117.    Accordingly, Defendant received and is in possession of excessive and unjust revenues and profits, and/or have caused Plaintiffs and other Class members to lose money or property directly as a result of Defendant's wrongful acts and practices.

118.    As a result of the above unlawful acts and practices of Defendants, Plaintiffs, on behalf of themselves and all others similarly situated, and as appropriate, on behalf of the general public of the state of California, seek injunctive relief prohibiting Defendant from continuing these wrongful practices and ordering Defendant to disclose all material information concerning the Class Product to past and prospective consumers, and such other equitable relief, including restitution/disgorgement of either (1) the full purchase paid by customers who purchased Class Product, or (2) a portion of the purchase price paid by customers who purchased Class Product reflecting the difference in value between what Defendant represented to consumers and the product that Defendant actually delivered to consumers, to the fullest extent permitted by law.

## VI.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class pray for relief and judgment as follows:

A.    For an order declaring that this action is properly maintained as a class action and appointing Plaintiffs as representatives for the Class, and appointing Plaintiffs' counsel as Class counsel;

B.    That Defendants bear the costs of any notice sent to the Class;

C.    For an order awarding Plaintiffs and the members of the Class actual damages, punitive and exemplary damages, restitution, and/or disgorgement, to the extent allowed under the law;

D.    For an order enjoining Defendants from continuing to engage in the

FIRST AMENDED COMPLAINT                    2:21-cv-01519-KJM-KMN

unlawful and unfair business acts and practices as alleged herein;

      E.     For an order awarding Plaintiffs and the members of the Class pre- and post-judgment interest;

      F.     For an order awarding attorneys' fees and costs of suit, including expert witnesses' fees as permitted by law; and

      G.     Such other and further relief as this Court may deem just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiffs and the putative Class demand a trial by jury for all of the claims asserted in this Complaint so triable.


DATED: October 27, 2021             Respectfully submitted,

FINKELSTEIN & KRINSK LLP


By: */s/ John J. Nelson*
      John J. Nelson

Jeffrey R. Krinsk, Esq.
John J. Nelson, Esq.
Keia James Atkinson, Esq.
501 W. Broadway, Ste. 1260
San Diego, CA 92101
Telephone:  (619) 238-1333
Facsimile:   (619) 238-5425

Attorneys for Plaintiffs
and the Putative Class

# EXHIBIT A

## AFFIDAVIT OF VENUE

I, Kelly Rice, declare that:

    1.    I have personal knowledge of the facts cited in this declaration and if called as a witness I would competently testify thereto.

    2.    I am a named plaintiff in this case.

    3.    I purchased the Huggies brand Snug & Dry diapers, which are the subject of this case, from Amazon.com, from my home in Sacramento, in Sacramento County, California as described in the complaint.

    I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing declaration is true and correct, and was executed by me in the city of Sacramento, Sacramento County, California on August 17, 2021.

By: _____

Kelly Rice
Declarant

I, Tawanna Rice, declare that:

1.     I have personal knowledge of the facts cited in this declaration and if called as a witness I would competently testify thereto.

2.     I am a named plaintiff in this case.

3.     I purchased the Huggies brand Snug & Dry diapers, which are the subject of this case, from Amazon.com, from my home in Sacramento, in Sacramento County, California as described in the complaint.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing declaration is true and correct, and was executed by me in the city of Sacramento, Sacramento County, California on August __П__, 2021.


By: _____
          Tawanna Rice
          Declarant