UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Tawanna Rice, et al., | No. 2:21-cv-01519-DAD-KJN |
| Plaintiffs, | ORDER |
| v. | |
| Kimberly-Clark Corporation, a Delaware corporation, | |
| Defendant. | |

Plaintiffs Tawanna and Kelly Rice bring this putative class action claiming defendant Kimberly-Clark Corporation, the manufacturer and distributor of Huggies Snug and Dry diapers, violated state consumer protection laws.  Defendant moves to dismiss.  For the reasons below, the **motion is denied as to plaintiffs' consumer fraud claims** and **granted in part as to plaintiffs' claims for equitable relief, with leave to amend**.  The court also **strikes all references in the operative complaint to marketing outside of that appearing on defendant's Amazon.com storefront**, but **grants plaintiffs leave to amend**.[1]

---

[1] The court notes this case has been randomly reassigned to District Judge Dale A. Drozd. Because the undersigned heard the motion addressed by this order, she is issuing it in the interests of judicial efficiency, with the understanding that all future proceedings will take place before Judge Drozd.

## I.   BACKGROUND

Plaintiffs Tawanna and Kelly Rice had a son born to them in May 2021.  First Am. Compl. (FAC) ¶ 19, ECF No. 9.  Approximately two months after coming home from the hospital, the Rices began looking for a diaper that would "protect" their son as he grew.  *Id.*  The Rices ultimately bought Huggies Snug and Dry diapers from defendant's storefront on Amazon.com.  *Id.*  In purchasing the diapers, the Rices relied on the representations made on the Amazon.com storefront "and throughout [d]efendant's pervasive print and television marketing," which led them to believe the diapers were "designed to be safe for the skin of babies and infants."  *Id.*

Shortly after putting their son in the Snug and Dry diapers, the Rices noticed he began developing "severe and persistent rashes, lesions, blistering, and what appeared to be chemical burns on his skin" under the diaper.  *Id.* ¶ 20.  Their son's condition did not improve, despite frequent diaper changes, regular application of diaper cream, and application of antibiotic ointment to the affected areas.  *Id.*  The Rices stopped using baby wipes, believing those might be the culprit, but his condition worsened.  *Id.*  A clinician prescribed the baby a five-day course of antibiotics, to no avail.  *Id.*  Finally, "having tried everything else to help their baby son," the Rices changed diaper brands.  *Id.*  Roughly two weeks later, their son's condition "significantly improved."  *Id.*  Since stopping the use of Snug and Dry diapers, their son "has not had any adverse skin reactions and his skin has remained healthy."  *Id.*  The Rices also resumed using the same baby wipes without incident.  *Id.*

On its Amazon.com storefront, Huggies represents, among other things, that Snug and Dry diapers help keep an infant "dry & comfortable" and contain "[n]o harsh ingredients."  *Id.* ¶¶ 35, 36.  The Huggies Snug and Dry product webpages operated by Kimberly Clark, Target, and Amazon include numerous negative consumer reviews of the product.  *Id.* ¶¶ 32–34.  Some of the reviewers describe moderate to severe bumps, rashes, blisters, bleeding, peeling, and/or chemical burns that developed on their babies under the area covered by the diaper after they began using the Snug and Dry product.  *Id.*  These reviews date back to 2012.  *Id.* ¶ 32.  The "Huggies team" or "Huggies Brand Team" acknowledges and responds to many of these reviews

2

on both its own and third-party websites, noting, for example, that "[t]he health and well-being of little ones are our top priority, which is why each product goes through rigorous tests to ensure they're gentle on baby's delicate skin." *Id.* ¶¶ 7–9, 33. Some responses also note the exact cause of irritation can be "hard to pinpoint" and encourage the reviewers to reach out to Huggies directly by phone. *Id.* ¶ 33.

The Rices filed the operative complaint against defendant, alleging three claims: (1) violation of the California Consumers Legal Remedies Act (CLRA), Cal. Civ. Code § 1770(a)(5)(7)(9)(16); (2) violation of the California False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500; and (3) violation of the California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200. *Id.* ¶¶ 68–118. They seek to maintain this action as a class action, and demand monetary damages and injunctive relief. *See id.* at 36–37 (Prayer for Relief).[2]

Defendants move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). *See generally* Mot. to Dismiss, ECF No. 10-1. Plaintiffs oppose the motion, Opp'n, ECF No. 13, and defendant has replied, Reply, ECF No. 15. The court heard oral argument on this motion on March 25, 2022. John Nelson appeared for plaintiffs and Timothy Loose appeared for defendant. ECF No. 19.

## II.   LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A motion to dismiss may be granted only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019). If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

---

[2] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But this rule demands more than unadorned accusations; "sufficient factual matter" must make the cause of action at least plausible.  *Iqbal*, 556 U.S. at 678.  In the same vein, conclusory or formulaic recitations of the elements do not alone suffice.  *Id.* (quoting *Twombly*, 550 U.S. at 555).  This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense."  *Id.* at 679.

When a party alleges "fraud or mistake," its claim "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "[T]he circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).  Thus, plaintiffs must plead the "who," "when," "what," "where," and "how" of the fraudulent activity.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

### III.   ANALYSIS

The court briefly addresses plaintiffs' request for judicial notice and defendant's argument that the court should dismiss their claims for equitable relief before turning to the heart of this dispute: plaintiffs' fraud and consumer protection claims under the CLRA, FAL, and UCL.

#### A.   Request for Judicial Notice

A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *cf. Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of complaint on 12(b)(6) motion).  The plaintiffs request the court take judicial notice of a webpage on the United States Food and Drug Administration (FDA) website explaining the lack of standards and definitions governing the use

1   of the term "hypoallergenic."  Request for Judicial Notice, Ex. A, ECF No. 14.  Defendants do

2   not oppose taking judicial notice of the page, but argue in their reply that "simply pointing to

3   FDA's purported definition of 'hypoallergenic'" cannot render defendants' statements "false or

4   misleading."  Reply at 10 (citing *McAteer v. Target Corp.*, No. 18-349, 2018 WL 3597675, at *5

5   (D. Minn. July 26, 2018) (finding pleadings insufficient to state actionable claims based on

6   defendant's "hypoallergenic" claim).

7           The court **grants this request** and takes judicial notice of the webpage.  *Paralyzed*

8   *Veterans of Am. v. McPherson*, No. 6-4670, 2008 WL 4183981, *5 (N.D. Cal. Sept. 8, 2008)

9   ("Information on government agency websites [has] often been treated as proper subjects for

10  judicial notice").

11          **B.      Claims for Equitable Relief**

12          Defendant argues the Rices' "claims for equitable relief under the UCL, FAL, and CLRA,

13  and their claim for unjust enrichment, should be dismissed for the separate and independent

14  reason that Plaintiffs fail to plausibly allege that they have no adequate remedies at law."  MTD at

15  16 (citing *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009)).  Plaintiff seeks both

16  restitution and injunctive relief.  *See* FAC at 36–37.  Defendant is correct that plaintiffs do not

17  explicitly allege the available legal remedies are inadequate.  *See, e.g., Sonner v. Premier*

18  *Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) ("[Plaintiff] must establish that she lacks an

19  adequate remedy at law before securing equitable restitution for past harm under the UCL and

20  CLRA.").  Nor do plaintiffs "explain why or how the requested CLRA damages are an inadequate

21  remedy justifying restitution damages."  *Andino v. Apple, Inc*., No. 20-01628, 2021 WL 1549667,

22  at *5 (E.D. Cal. Apr. 20, 2021).  While plaintiffs may plead theories of recovery in the

23  alternative, *see* Fed. R. Civ. P. 8(d)(2)&(3), the rule does not remedy the deficit in plaintiffs'

24  complaint as they do not allege they lack an adequate legal remedy, *see* FAC ¶¶ 91, 118; *Sonner*,

25  971 F.3d at 845.

26          Accordingly, the Rices' **claim for equitable restitution is dismissed, but with leave to**

27  **amend if possible**.  *See Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109,

28  1117 (9th Cir. 2013) ("Courts may decline to grant leave to amend only if there is strong evidence

of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'").  However, defendant's motion with respect to the injunctive relief claim is denied for reasons explained below.

In *Sonner*, the Ninth Circuit affirmed a district court's order dismissing a plaintiff's claim for restitution for past harm because the plaintiff failed to demonstrate she lacked an adequate legal remedy.  971 F.3d at 845.  The court explicitly noted "[i]njunctive relief is not at issue." *Id.* 842.  Since *Sonner*, district courts have split on whether the decision applies to injunctive relief claims.  *See Kryzhanovskiy v. Amazon.com Servs., Inc.*, No. 22-1292, 2022 WL 2345677, at *4 (E.D. Cal. June 29, 2022) (noting split in authority); *compare Teresa Adams v. Cole Haan, LLC*, No. 20-913, 2020 WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020) (finding no "exception for injunctions as opposed to other forms of equitable relief") *with Andino*, 2021 WL 1549667, at *5 ("The Court however agrees with Plaintiff that *Sonner* does not warrant dismissal of his request for injunctive relief.").

This court agrees *Sonner* does not bar plaintiffs' claim for injunctive relief in this case. Plaintiffs plead that injunctive relief is "necessary to prevent consumers who rely on [Snug and Dry diaper] labels from being harmed by unanticipated adverse skin reactions" and allege "[d]efendant's conduct is ongoing and continuing and the threat of imminent harm to uninformed consumers is substantial."  FAC ¶ 90.  They "desire to purchase [Snug and Dry diapers] in the future if the products could be made to conform with the representation of the [Snug and Dry diaper] labels." *Id.*  The court finds plaintiffs' contention that they and other future consumers will continue to be misled is sufficient at this stage of litigation to show likelihood of future harm. *See Roper v. Big Heart Pet Brands, Inc.,* 510 F. Supp. 3d 903, 918 (E.D. Cal. 2020) ("Although monetary damages may ultimately fully address plaintiff's harm, at this stage of the litigation there is 'an ongoing, prospective nature to [plaintiff's allegations] . . . .'").  "Money damages are an inadequate remedy for future harm, as they will not prevent Defendant from continuing the allegedly deceptive practice."  *Andino*, 2021 WL 1549667, at *5.  Viewed in the light most

6

1  favorable to plaintiffs, the allegations in the complaint are sufficient to suggest a likelihood of

2  future harm amenable to injunctive relief.

3          **C.      Fraud and Consumer Protection Claims**

4          The Rices' CLRA, FAL, and UCL claims are premised on defendant's alleged knowledge

5  and knowing concealment of a defect in Huggies Snug and Dry diapers.  *See* FAC ¶¶ 7–8.

6  "Courts often analyze these statutes together because they share similar attributes."  *In re Sony*

7  *Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal.

8  2014), *order corrected*, No. 11-2258, 2014 WL 12603117 (S.D. Cal. Feb. 10, 2014).  For

9  example, a defendant may be liable under the CLRA, FAL, or UCL by (1) making fraudulent

10  affirmative misrepresentations and/or (2) fraudulently omitting information contrary to

11  representations it made or information it was obliged to disclose.  Here, plaintiffs argue defendant

12  did both.  FAC ¶ 30.  Because affirmative misrepresentation and fraudulent omission theories are

13  both "grounded in fraud," the complaint must satisfy the heightened pleading standards of Rule

14  9(b).  *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992–93 (E.D. Cal. 2012) (citing *Kearns*,

15  567 F.3d at 1125–27 (9th Cir. 2009)).

16          Violations of the CLRA, FAL, and UCL are analyzed under the reasonable consumer test,

17  which requires a plaintiff ultimately to show "members of the public are likely to be deceived" by

18  a defendant's activity.  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citation

19  and internal quotation marks omitted).  Courts will rarely grant a motion to dismiss for failure to

20  satisfy this test in the initial pleadings "[b]ecause what a reasonable person would believe is

21  generally a question of fact," *Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-03613, 2020

22  WL 1245130, at *9 (N.D. Cal. Mar. 16, 2020), and at this stage, the court's focus is on the

23  plausibility of the legal theories, *Iqbal*, 556 U.S. at 679.

24          Defendant argues the court should dismiss plaintiff's CLRA, FAL, and UCL claims

25  because plaintiffs do not plead sufficient facts to support an affirmative misrepresentation or

26  omission theory.  *See* MTD at 10, 12.  As set forth below, the court finds plaintiffs have pled their

27  fraud claims with the requisite particularity with respect to the statements made on defendant's

28  Amazon.com storefront.  In so finding, the court first addresses two requirements common to all

7

1    fraud claims: actual reliance and defendant's knowledge of the defect.  The court then addresses

2    defendant's distinct challenges to plaintiff's affirmative misrepresentation and omission theories.

3                                    **1.      Actual Reliance**

4         "Standing to bring CLRA, UCL, and FAL claims" requires plaintiffs to allege "actual

5    reliance." *Stewart v. Electrolux Home Prod., Inc.*, No. 17-1213, 2018 WL 1784273, at *4 (E.D.

6    Cal. Apr. 13, 2018).  Here, plaintiffs allege they "purchased the [diapers] after viewing and[]

7    relying on the representations on the Huggies storefront on Amazon.com . . . that [Huggies Snug

8    and Dry diapers] were reputable and designed to be safe for the skin of babies and infants."  FAC

9    ¶ 19; *see id.* ¶¶ 35–36.  Plaintiffs say they "would not have purchased the product and certainly

10   would not have paid the same price" if they had known about the alleged "propensity" of Snug

11   and Dry diapers "to harm babies and infants in the manner their son was harmed . . . ."  *Id.* ¶ 21.

12   Thus, contrary to defendant's argument, MTD at 12–14, plaintiffs do allege actual reliance, *see*

13   *Falk v. General Motors Corp*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007) (finding plaintiffs

14   pleaded reliance by alleging "a 'reasonable customer' would not have paid the asking price had it

15   been disclosed that the speedometer was defective; similarly, this same customer may have

16   justifiably relied on [defendant's] failure to disclose defects in the speedometer").

17                                **2.      Knowledge of Defect**

18        Plaintiffs argue defendant's statements "help convince consumers" that the diapers are

19   "suitable for sensitive skin despite [d]efendant's knowledge that they cause significant, unusual

20   and unexpected rashes, peeling and/or chemical burns."  FAC ¶ 35.  Rule 9(b) provides

21   defendant's "knowledge need only be alleged generally, with non-conclusory, plausible

22   allegations."  *Luong v. Subaru of Am. Inc.*, No. 17-3160, 2018 WL 2047646, at *5 (N.D. Cal.

23   May 2, 2018).  Courts disagree on whether consumer complaints "in and of themselves

24   adequately support an inference that a manufacturer was aware of a defect[.]"  *Wilson v. Hewlett-*

25   *Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012).  In *Williams v. Yamaha Motor Co.*, 851 F.3d

26   1015 (9th Cir. 2017), however, the Ninth Circuit clarified that consumer complaints may support

27   an allegation of presale knowledge of a defect in some circumstances.  *Id.* at 1027.  The court

28   wrote that its previous holding in *Wilson* did not foreclose the use of consumer complaints to

8

1   show knowledge, but "absent dates to indicate that the complaints were made pre-sale, and some

2   evidence that defendant actually received the complaints, it would be speculative at best to find

3   that the defendant knew of the alleged defect." *Id.* at 1027.

4          District courts have also found consumer complaints sufficient where plaintiff alleges

5   facts indicating defendant knew of the complaints when plaintiff purchased the item. *Compare*

6   *Resnick v. Hyundai Motor Am., Inc.*, No. CV 16-00593, 2017 WL 1531192, at *15 (C.D. Cal.

7   Apr. 13, 2017) (finding plaintiffs did not adequately allege knowledge when plaintiffs did not

8   plead facts indicating defendant was aware of particular complaints or monitored particular

9   websites), *with Borkman v. BMW of N. Am., LLC*, No. CV 16-2225, 2017 WL 4082420, at *5

10  (C.D. Cal. Aug. 28, 2017) (finding plaintiff sufficiently alleged defendant's knowledge of defect

11  through consumer complaints to defendant's dealers and on third-party websites, aggregate data

12  from dealers, consumer complaints to National Highway Traffic Safety Administration (NHTSA)

13  and resulting notice from NHTSA, dealership repair orders, and other internal sources of

14  aggregate information about defect). In *Obertman v. Electrolux Home Care Products, Inc.*, this

15  court found a specific complaint on defendant's own website sufficed to show knowledge where

16  "an agent of defendant specifically responded to the complaint shortly after it was posted, if not

17  both." 482 F. Supp. 3d 1017, 1023 (E.D. Cal. 2020).

18         Here, the operative complaint quotes specific consumer reviews on defendant's website

19  and those of third-party retailers alleging that Snug and Dry diapers harmed infants' skin. FAC

20  ¶¶ 32–34. The "Huggies team" acknowledges and responds to many of these reviews. *Id.* ¶¶ 7–9,

21  33. The significant number of complaints pre-dating plaintiffs' purchase by up to two years, the

22  alleged responses by defendant's agents to those complaints, the fact many of the complaints

23  were posted on defendant's own website, and the many similar complaints on top retailers'

24  websites is sufficient, in combination, to allege defendant's knowledge at this stage. *Cf. Espineli*

25  *v. Toyota Motor Sales, U.S.A., Inc.*, No. 17-00698, 2019 WL 2249605, at *6 (E.D. Cal. May 24,

26  2019) (finding consumer and NHTSA complaints insufficient to show knowledge because

27  complaint did "not allege how or where these complaints were made, or otherwise allege how

1  defendants could have been aware of them" and only three complaints predated plaintiff's

2  purchase of product).

3  **3.    Fraudulent Affirmative Misrepresentations**

4      The FAL, UCL, and CLRA "prohibit not only advertising which is false, but also

5  advertising which [,] although true, is either actually misleading or which has a capacity,

6  likelihood or tendency to deceive or confuse the public." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939,

7  951 (2002), *as modified* (May 22, 2002) (quotations omitted) (discussing UCL, FAL); *Klein v.*

8  *Chevron U.S.A., Inc*., 202 Cal. App. 4th 1342, 1382 (2012), *as modified on denial of reh'g*

9  (Feb. 24, 2012) (discussing CLRA); *see also Handy v. LogMeIn, Inc.*, No. 14-01355, 2015 WL

10 1729681, at *4 (E.D. Cal. Apr. 15, 2015).  Defendant argues plaintiffs do not plead facts to

11 support an affirmative misrepresentation theory because defendant's statements are "non-

12 actionable advertising statements" and no reasonable consumer would need to be warned about

13 the possibility of diaper rash resulting from the use of diapers.  MTD at 12–17.  The court is not

14 persuaded, at least as to certain statements on Huggies Snug and Dry Amazon.com storefront.

15     Plaintiffs' complaint references defendant's statements on its Amazon.com storefront,

16 marketing on defendant's website, and defendant's responses to customer complaints on both

17 Target.com and the Huggies brand website.  FAC ¶¶ 7–9, 33, 35–36, 40, 41, 42.  However,

18 plaintiffs do not allege their reliance on specific statements on defendant's website or any

19 customer complaints.  They allege only that they were exposed to and relied on "the

20 representations on Huggies storefront on Amazon.com" and "throughout [d]efendant's pervasive

21 print and television marketing" in purchasing the Snug and Dry diapers after their son's birth in

22 May 2021.  *Id.* ¶ 19.  The court first addresses the Rices' "pervasive print and marketing"

23 allegations before addressing the statements on defendant's Amazon.com storefront.

24     At hearing, counsel for plaintiffs cited the *In re Tobacco II Cases* for the proposition that

25 where a "pervasive" marketing campaign exists, plaintiffs need not point to specific

26 representations to allege fraudulent affirmative misrepresentations.  *See In re Tobacco II Cases*,

27 46 Cal. 4th 298 (2009).  Courts in this circuit have construed the *In re Tobacco II* exception

28 narrowly, finding a plaintiff must still allege the duration and pervasiveness of the alleged

advertising campaign. *Tabler v. Panera LLC*, No. 19-01646, 2020 WL 3544988, at *3 (N.D. Cal. June 30, 2020) ("The unadorned assertion that allegedly fraudulent representations are 'ubiquitous at the point of sale' is insufficient to plead an advertising campaign of the necessary 'longevity and pervasiveness' required to invoke *In re Tobacco II*.") (citation omitted); *see also Anderson v. SeaWorld Parks and Entm't, Inc.*, No. 15-2172, 2016 WL 8929295, at *8 (N.D. Cal. Nov. 7, 2016) (finding *In re Tobacco II* inapplicable because plaintiff did not "include particular details about the extent and pervasiveness of the [defendant's] advertising campaign"); *PETA v. Whole Foods Mkt. Cal.*, No. 15-4301, 2016 WL 362229, at *1, 5 (N.D. Cal. Jan. 29, 2016) (plaintiffs' allegation that "in-store advertisements on placards, signs, and napkins" "inundated" plaintiffs when they entered defendant's stores insufficient to satisfy *In re Tobacco II* exception; plaintiffs were required to plead "which signs and placards were deceptive advertising," and "over what time period they were placed in the store").

Here, the Rices do not allege how long they were exposed to the allegedly "pervasive" marketing, noting only defendant "spends tens of millions of dollars annually to create a pervasive marketing message that its diapers are safe," and "Huggies was the first diaper brand to be featured in a super bowl advertisement in February of 2021." FAC ¶ 24. Because plaintiffs do not satisfy the *In Re Tobacco II* exception or identify misleading statements in "defendant's pervasive . . . marketing" they were exposed to or relied on, the court considers only the representations appearing on defendant's Snug and Dry Amazon.com storefront. *See generally* FAC; *id.* ¶¶ 19, 35–36; *see also Otero v. Zeltiq Aesthetics, Inc.*, No. 17-3994, 2017 WL 9538711, at *6 (C.D. Cal. Nov. 21, 2017) (finding plaintiffs did not satisfy Rule 9(b) requirements where plaintiffs did not allege which specific statements plaintiffs were exposed to and relied on in purchasing product). For the same reasons and as provided by Federal Rule of Civil Procedure 12(f), the court *sua sponte* **strikes all references in the operative complaint to marketing outside of that appearing on defendant's Amazon.com storefront**, but **grants plaintiffs leave to amend consistent with this order, to the extent possible**. *Sonoma Cty. Ass'n of Retired Emps.*, 708 F.3d at 1117.

1    In its briefs, defendant argues plaintiffs only make general allegations about the Rices'

2   reliance on the Amazon.com storefront, *see* MTD at 13 & Reply at 12 (citing *Otero*, 2017 WL

3   9538711), and that these allegations are not sufficiently particular to survive a motion to dismiss.

4   At hearing, plaintiffs' counsel responded that the "representations on the Huggies storefront on

5   Amazon.com" plaintiffs viewed and relied upon in purchasing the diapers, *see* FAC ¶ 19,

6   includes those set forth in paragraphs 35 and 36 of the complaint, which detail what the storefront

7   said about the diapers, *id*. ¶¶ 35, 36.  The court agrees this is a fair reading of the complaint and

8   considers in turn defendant's statements representing that its Snug and Dry diapers offer

9   "unbeatable protection," contain "[n]o harsh ingredients," are "[h]ypoallergenic and free of

10  fragrances, parabens, elemental chlorine & natural rubber latex," "help[] prevent leaks for up to

11  12 hours, day or night," and "absorb[] wetness in seconds to help keep baby dry & comfortable."

12  FAC ¶¶ 35–36.

13   The court agrees defendant's statement that its Snug and Dry diapers offer "unbeatable

14  protection" is the type of "generalized, vague and unspecific assertions, constituting mere

15  'puffery' upon which a reasonable consumer could not rely." *Glen Holly Ent., Inc. v. Tektronix*

16  *Inc.*, 343 F.3d 1000, 1015 (9th Cir.), *opinion amended on denial of reh'g*, 352 F.3d 367 (9th Cir.

17  2003) (quoting *Cook, Perkiss & Liehe, Inc. v. N. CA Collection Serv. Inc.*, 911 F.2d 242, 246 (9th

18  Cir. 1990) ("general assertions of superiority" are puffery)).  "However, misdescriptions of

19  specific or absolute characteristics of a product are actionable." *Cook, Perkiss & Liehe, Inc.*,

20  911 F.2d at 246 (quotations, citations omitted).  Defendant's statements that Snug and Dry

21  diapers contain "No Harsh Ingredients – Hypoallergenic and free of fragrances, parabens,

22  elemental chlorine & natural rubber latex," "help[] prevent leaks for up to 12 hours, day or night,"

23  and "absorb[] wetness in seconds to help keep baby dry & comfortable" are all specific

24  representations of fact on which a reasonable consumer could rely.  FAC ¶¶ 35–36; *see*

25  *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1039 (N.D. Cal. 2014).

26   Plaintiffs argue these specific representations, taken together, could lead a reasonable

27  consumer to believe Snug and Dry diapers keep a child's skin dry, minimize diaper rash, do not

28  contain ingredients that could harm infant skin, are suitable for sensitive skin, and are "safe for

1  . . . intended use," when in reality a "significant number of children who wear [them] will

2  develop" serious injuries.  FAC ¶¶ 3, 22, 30, 40, 45; *see Williams*, 552 F.3d at 939 n.3 (observing

3  individual statements constituting "puffery" standing alone may contribute to "whole"

4  packaging's "deceptive context").  These allegations support a plausible legal theory, in pleading

5  what a reasonable person would believe when reading the statements.  *See Rice-Sherman*, 2020

6  WL 1245130, at *9.

7       Defendants argue "no reasonable consumer would need to be warned about the possibility

8  of encountering a diaper rash when using diapers."  MTD at 16.  But plaintiffs are not claiming

9  defendant's statements imply the Snug and Dry diapers will never cause diaper rash.  Rather, they

10  argue the statements suggest the diapers will never cause more severe, "unexpected" injuries,

11  including chemical burns.  FAC ¶ 35.

12       The plaintiffs have successfully stated a claim for fraudulent affirmative

13  misrepresentation.  The court denies the motion in this respect.

14              **4.      Fraudulent Omissions**

15       Defendant claims plaintiffs do not plead sufficient facts to support an omission theory.

16  MTD at 10.  "Omissions may be the basis of claims under California consumer protections laws,

17  but 'to be actionable the omission must be contrary to a representation actually made by the

18  defendant, or an omission of a fact the defendant was obliged to disclose.'"  *Hodsdon v. Mars,*

19  *Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (quoting *Daugherty v. Am. Honda Motor Co.*,

20  144 Cal. App. 4th 824 (2006)).  To plead fraudulent omission with particularity, a plaintiff must

21  "describe the content of the omission and where the omitted information should or could have

22  been revealed, as well as provide representative samples of advertisements, offers, or other

23  representations that plaintiff relied on to make her purchase and that failed to include the

24  allegedly omitted information."  *Eisen v. Porsche Cars N.A., Inc.*, No. 119405, 2012 WL 841019,

25  at * 3 (C.D. Cal. Feb. 22, 2012)).

26       As discussed, plaintiffs provided screenshots of defendant's advertisements from

27  defendant's Amazon.com storefront stating, among other things, that the Huggies Snug and Dry

28  diapers have "[n]o harsh ingredients" and "help keep baby dry & comfortable."  FAC ¶ 36.

1    Plaintiffs argue these statements convinced them the diapers are "suitable for sensitive skin

2    despite [d]efendant's knowledge that they cause significant, unusual and unexpected rashes,

3    peeling, and/or chemical burns." *Id.* ¶ 35.  These allegations are sufficient to put defendant on

4    notice of what plaintiffs claim was omitted, specifically (1) a statement qualifying defendant's

5    claims regarding the safety of Snug and Dry diapers, and (2) a label on the packaging warning

6    consumers to stop using the diapers if a child suffers an unusual adverse skin reaction, as the

7    diapers "may be the source of their child's injury . . . ." *Id.* ¶ 40.  Plaintiffs also have pled

8    reliance.

9          The court addresses the distinct requirements to state a claim for omission under the FAL

10   and the CLRA or UCL below.

11                    a)      Omissions and the FAL

12         California's FAL prohibits any "unfair, deceptive, untrue, or misleading advertising."

13   *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1129 (S.D. Cal. 2021) (quoting *Ebner v.*

14   *Fresh, Inc.*, 838 F.3d 958, 967 n.2 (9th Cir. 2016)); *see* Cal. Bus. & Prof. Code § 17500.[3]  To

15   adequately plead a deceptive advertising claim, plaintiffs must "identify specific advertisements

16   and promotional materials; allege when [they] were exposed to the materials; and explain how

17   such materials were false or misleading."  *Takano v. Procter & Gamble Co.*, No. 17-00385, 2018

18   WL 5304817, at *8 (E.D. Cal. Oct. 24, 2018) (citation omitted).  A FAL claim predicated on a

19   theory of omission "must identify an actual affirmative statement by [defendant] that was made

20   false by the omission of some material fact."  *Stewart v. Electrolux Home Prod., Inc.*,

21   304 F. Supp. 3d 894, 908 (E.D. Cal. 2018).

22         Again, plaintiffs allege they were exposed to and relied on the representations on

23   defendant's Amazon.com storefront that the diapers keep an infant "dry & comfortable" and

24   contain "[n]o harsh ingredients."  FAC ¶¶ 19, 35, 36.  If, as plaintiffs allege, the diapers cause

---

[3] "It is unlawful for any person, firm, corporation or association . . . with intent directly or indirectly to dispose of real or personal property . . . to make or disseminate . . . in any newspaper or other publication, or any advertising device, . . . any statement, concerning that real or personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."  Cal. Bus. & Prof. Code § 17500.

1   "significant, unusual and unexpected rashes, peeling, and/or chemical burns," this undercuts the

2   veracity of those affirmative statements.  FAC ¶¶ 35–36; *see Tait v. BSH Home Appliances Corp.*,

3   No. 10-00711, 2011 WL 3941387, at *1 (C.D. Cal. Aug. 31, 2011) (denying motion to dismiss

4   FAL claim where defendant stated its washing machines were "Xxtra Sanitary" and "high

5   efficiency" but instead required additional cleaning due to mold and bacteria accumulation).

6          Plaintiffs have thus stated a viable fraudulent omission claim under the FAL.

7                  b)      Duty to Disclose Under the CLRA and UCL Unlawful Prong

8          California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts

9   or practices . . . undertaken by any person in a transaction intended to result or that results in the

10  sale . . . of goods or services to any consumer."  Cal. Civ. Code § 1770.  Similarly, California's

11  UCL generally prohibits (1) unlawful, (2) unfair, and (3) fraudulent acts or practices.  Cal. Bus. &

12  Prof. Code § 17200; *Vincent v. PNC Mortg., Inc.*, No. 14-00833, 2014 WL 2766116, at *7 (E.D.

13  Cal. June 18, 2014).  "Each prong . . . is a separate and distinct theory of liability . . . offer[ing] an

14  independent basis for relief."  *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir.

15  2007).  A "predicate violation" of law, including the CLRA or FAL, may satisfy the unlawful

16  prong of the UCL.  *Shelton v. Ocwen Loan Servicing, LLC*, No. 18-02467, 2019 WL 4747669, at

17  *10 (S.D. Cal. Sept. 30, 2019); *Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 922

18  (E.D. Cal. 2020) ("[A] CLRA or FAL violation properly falls into the category of a state, federal,

19  or local law . . . .").  The plaintiffs claim defendant violated all three prongs of the UCL by

20  violating the CLRA and FAL, and by fraudulently omitting material information, i.e., information

21  that would affect a consumer's decision about whether to purchase the Snug and Dry diapers.

22  FAC ¶¶ 92–118.

23         To prevail ultimately on their CLRA and UCL omission claims, plaintiffs must

24  demonstrate defendant had a duty to disclose information regarding the Snug and Dry diaper's

25  alleged "propensity to cause prolonged adverse skin reactions."  Opp'n at 8; *see Hodsdon*,

26  891 F.3d 857 at 861.  To show a duty to disclose, the plaintiff must "[1] allege[] that the omission

27  was material; [2] plead that the defect was central to the product's function; and [3] allege one of

28  the four *LiMandri* factors."  *Hodsdon*, 891 F.3d at 863.  The *LiMandri* factors relevant here

15

1    include circumstances when the defendant "has exclusive knowledge of material facts not known

2    or reasonably accessible to the plaintiff," "actively conceals a material fact from the plaintiff," or

3    "makes partial representations that are misleading because some other material fact has not been

4    disclosed." *Id.* at 862 (quoting *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011), *as*

5    *modified* (Dec. 28, 2011) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 543 (1997))).

6    Omitted information is material if plaintiff alleges that "had the omitted information been

7    disclosed, one would have been aware of it and behaved differently." *Mirkin v. Wasserman*, 5

8    Cal. 4th 1082, 1093 (1993).

9         Here, plaintiffs allege they would not have purchased the diapers if they had known about

10   the propensity to cause unusual and severe skin reactions.  FAC ¶ 21.  They also plead the

11   diaper's design "is intended to absorb excess moisture and prevent irritation and rashes," but it

12   "exacerbates" and causes persistent injuries in certain children.  *Id.* ¶¶ 19–21, 27.  Finally,

13   plaintiffs sufficiently allege at least one of the relevant *LiMandri* factors, that defendant made

14   partial statements that misled consumers into believing the diapers were safe for all babies.  *See*

15   FAC ¶¶ 8, 35–36, 40–42.  Because plaintiffs have adequately alleged one *LiMandri* factor, the

16   court does not consider the others.

17        Defendant argues plaintiffs "cannot claim that material information has been withheld"

18   because "the purported harm is nothing more than a 'well-known fact[] of life'".  Reply at 6

19   (quoting *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012)).

20   Accepting that some diaper rash is a fact of life, plaintiffs allege their son and other children

21   experienced both diaper rash and more severe, unusual, and persistent injuries, including

22   "chemical burns" resulting exclusively from the Snug and Dry diapers.  *See generally* FAC.

23   Defendant itself implicitly acknowledged that a chemical burn is not diaper rash when it

24   responded to a customer review alleging the diapers caused "severe chemical burns," by saying

25   "Huggies products can't cause a chemical burn . . . ."  *Id.* ¶ 9.

26        Whether plaintiffs can prove their allegations is a question of fact not suitable to resolve

27   on a motion to dismiss.  The plaintiffs have successfully stated a claim under the CLRA and

28   UCL's unlawful prong.

1

                c)      UCL's Fraud Prong

2          The plaintiffs state a claim under UCL's fraud prong for the same reasons they

3  sufficiently plead fraud for the purposes of Rule 9(b).  Alternatively, they state a claim under this

4  prong because members of the public are "likely to be deceived" by defendant's omission of

5  information plaintiffs allege it had a duty to disclose.  *Daugherty*, 144 Cal. App. 4th at 838.

6

                d)      UCL's Unfair Prong

7          Turning to the UCL's unfair prong, this court has consistently applied the traditional test

8  for a consumer claim: "A business practice is unfair within the meaning of the UCL if it violates

9  established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes

10  injury to consumers which outweighs its benefits."  *See Espineli*, 2019 WL 2249605, at *9

11  (quoting *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006)).  While alleging a

12  duty to disclose is not necessary to state a claim under the UCL's unfair prong, *Hodsdon*,

13  891 F.3d at 865–66, plaintiffs have stated a claim under this prong because defendant's failure to

14  disclose information it had a duty to disclose is "substantially injurious, immoral, or unethical."

15  *Id.* at 867 (citing *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255 (2006)); *see also*

16  *McKell*, 142 Cal. App. 4th at 1473 (determination whether practice is unfair "is one of fact which

17  requires a review of the evidence from both parties[,]" and "thus cannot usually be made on

18  [motions to dismiss]").

19  **IV.   CONCLUSION**

20          For the reasons above, defendant's **motion is denied as to plaintiffs' consumer fraud**

21  **claims** and **denied in part as to plaintiffs' claim for injunctive relief and granted in part as to**

22  **plaintiffs' claims for equitable restitution, with leave to amend**.  The court also **strikes all**

23  **references in the operative complaint to allegedly unlawful marketing outside of that**

24  **appearing on defendant's Amazon.com storefront**, but **grants plaintiffs leave to amend if**

25  **possible**. The court **grants plaintiffs' request for judicial notice**.  As noted during the hearing,

26  discovery may now commence, upon the filed date of this order.

27  /////

28  /////

1        This order resolves ECF Nos. 10 and 14.

2        IT IS SO ORDERED.

3   DATED:  November 7, 2022.

4                                                    _____
                                                     CHIEF UNITED STATES DISTRICT JUDGE
5